**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**MARVIN LEON CLAIR,**

**Petitioner,**

**v.**                                                            **Civil Action No.: 5:18cv20
(Judge Stamp)**

**DEWAYNE HENDRIX, Warden,**

**Respondent.**

## REPORT AND RECOMMENDATION

On January 26, 2018, Petitioner filed this habeas action pursuant to 28 U.S.C. §

2241 alleging that the Bureau of Prisons ("BOP") "unlawfully, arbitrarily and capriciously

expelled [him] from the Second Phase of RDAP Treatment -- the follow-up care Phase."

ECF No. 1 at p. 5. For relief, Petitioner seeks an order from this Court directing the BOP

to restore his placement in the follow-up care program, rescind his discharge from the

program and direct FCI Morgantown to place them back in the follow-up care portion of

RDAP to be completed at FCI Morgantown. On March 27, 2018, Respondent filed a

Motion to Dismiss, or in the alternative, Motion for Summary Judgment. ECF No. 13. A

Roseboro Notice was issued on March 29, 2018. ECF No. 16. On April 18, 2018,

Petitioner filed a Response in Opposition [ECF No. 20] as well as a Motion to Strike the

Declaration of Christina Ganz[1]. ECF No. 19. The matter is now before the undersigned

---

[1] In support of his motion to strike, the Petitioner refers to Blacks Law Dictionary and its definition of personal knowledge. In addition, he refers to Rule 602 of the Federal Rules of Evidence. The Petitioner then argues that every item and attachment to the declaration was prepared by persons other than the declarant and the declaration is not admissible because it does not comply with Rule 56(c)(4) of the Federal Rules of Civil Procedure. The undersigned notes that this Court has routinely accepted declarations dealing with RDAP determinations such as the one at issue in this case. Moreover, nowhere in the Declaration does Dr. Ganz, Ph.D., express any opinion, speculate or draw inferences. Rather, the

1

United States Magistrate Judge for a Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR PL P 2. For the reasons set forth below, the undersigned recommends that the Petition be denied.

## I.  <u>BACKGROUND</u>

### A.    THE BOP's Residential Drug Abuse Program

The Residential Drug Abuse Program ("RDAP") was created by the BOP pursuant to the Congressional mandate in the Violent Crime Control Law Enforcement Act ("VCCLEA") of 1994. Congress directed the BOP to "make available appropriate substance abuse treatment for each prisoner the [BOP] determines has a treatable condition of substance abuse addiction or abuse." 18 U.S.C. § 3621(b). Associated regulations require the inmate to complete and pass a drug abuse education course. 28 C.F.R. § 550.51.

The BOP must provide residential substance abuse treatment for all eligible prisoners, subject to available funding. 18 U.S.C. § 3621(e)(1). A prisoner is "eligible" for RDAP if he is "determined by the [BOP] to have a substance abuse problem," [and] he is "willing to participate in a residential treatment program." 18 U.S.C. § 3621(e)(B)(i) and (ii). The BOP may, as an incentive for successful completion of RDAP, reduce the inmate's sentence by up to one year. 18 U.S.C. § 3621(e)(2).

RDAP has three phases. 28 CFR 550.53. The first phase is a unit-based period and is comprised of a course of individual and group activities provided by a drug abuse specialist in the treatment unit set apart from the general population. <u>Id.</u> Upon

---

declaration is simply a chronological recitation of facts wholly supported by the attached documents from the Petitioner's central file and BOP policy statements.

successful completion of the residential component, inmates enter phase two, institution transitional services, where they receive counseling support while transitioning back into the general population of the facility. Id. The final component of RDAP is community-based transitional drug treatment ("TDAT") after an inmate transfers to a Residential Reentry Center ("RRC" or "halfway house") or home confinement. Id. To successfully complete RDAP, an inmate must finish all three phases. 28 C.F.R. § 550.56 (a).

Inmates may be expelled from RDAP because of disruptive behavior related to the program or unsatisfactory progress in treatment. 28 CFR 550.53 (g). Inmates are usually given a formal warning before removal from RDAP, but an inmate may be removed immediately by the institution's Drug Abuse Program Director ("DAPC") without an intervention if it is determined by the treatment team that the inmate's continued presence on the treatment unit will cause "an immediate and ongoing problem for staff and other inmates." Id. Inmates also will be removed from RDAP immediately if a Discipline Hearing Officer ("DHO") finds that they have committed a prohibited act involving alcohol or drugs, violence or threats of violence, escape or attempted escape, or any 100-level series incident. Id.

An inmate who previously declined, withdrew, or failed RDAP may apply for readmission to the program after 90 days. ECF No. 13-3 at p. 35. The treatment team and unit team will decide whether the inmate should be readmitted to RDAP. Id. If readmitted to the same or a different RDAP, the inmate will not receive any credit for prior treatment participation. Id.

**B . Petitioner's Conviction and RDAP History**

3

Petitioner is serving a 60-month sentence following his conviction in the United States District Court for the Eastern District of Virginia for conspiracy to commit bank fraud. On April 13, 2015, Petitioner was designated to serve his sentence at the Federal Correctional Institution at Bruceton Mills, West Virginia ("FCI Hazelton"). On September 1, 2015, he was transferred to the Federal Medical Center in Lexington, Kentucky (FMC Lexington").

On October 27, 2015, Petitioner was admitted to the RDAP at FMC Lexington. However, by April 19, 2016, Petitioner's treatment team met with him to address concerns regarding his "continuation of choosing to use poor boundaries with staff and to evaluate his progress in treatment." ECF No. 14-1 at p. 2. Staff informed Petitioner that "he needed to work on being more responsible and to continue working on setting healthier boundaries." Id. In addition, staff informed Petitioner that "he did not put forth a lot of effort with his orientation assignment." Id. Petitioner was given a Formal Warning of Expulsion[,] and he was informed that any rule infraction or behavioral issues he would be expelled from the program." Id. Finally, Petitioner was informed that he would need to complete a Learning Experience to address his behaviors. Id.

On June 29, 2016, Petitioner again met with his treatment team to discuss concerns with his progress in treatment. As a result of his lack of responsibility, lack of patience, and not being willing to follow staff instructions, Petitioner was asked to complete a Learning Experience. In addition, he was given a second Formal Warning of Expulsion. ECF No. 14-1 at p. 4.

Although Petitioner received two formal warnings of expulsion, he completed the unit-based component of treatment on October 7, 2016. He then began participating in

the follow-up services portion of the program. However on November 23, 2016, Petitioner was once again called to meet with his treatment team regarding an inappropriate comment he made during follow-up group. Specifically, on November 18, 2016 while in group, staff heard Petitioner make the comment "if she shows up at the door wearing a thong" and chuckled. ECF No. 14-1 at p. 6. At the time of this treatment intervention, it was noted that Petitioner had been called to meet with the treatment team on three previous occasions and received two formal warnings of expulsion. It was further noted that he "continued to demonstrate a lack of willingness to be receptive to feedback and apply treatment tools and concepts he learned while in RDAP." Id. Therefore, it was the treatment team's decision to remove him from RDAP follow-up. Id.

On December 19, 2016, Petitioner filed a request for administrative remedy at the institutional level, requesting reinstatement into RDAP. His request was denied by the Warden on December 23, 2016. ECF No. 13-3 at p. 13. On January 23, 2017, Petitioner appealed to the Mid-Atlantic Regional Office, once again filing a request for administrative remedy regarding his expulsion from RDAP. His request was denied by the Regional Director on March 24, 2017. Id.

On March 9, 2017, Petitioner was transferred to FCI Ashland [ECF No. 13-3 at p. 7] where, on March 12, 2017, he requested readmission to the RDAP via email. ECF No. 14-1 at p. 8. This request was made while his administrative grievance was pending at the regional level. Petitioner was instructed to complete an assignment regarding what he learned since his expulsion from the program. Id.  Although he informed staff that "the assignment and feedback provided to him had fostered his awareness of himself and helped him understand the effect of his behavior on others," a review of

Petitioner's phone calls "reveal the lack of gratitude, objectivity, caring, humility, open-mindedness, responsibility, and honesty." Id. After consulting with the Regional Psychology Treatment Program ("PTP") Coordinator, the DACP at FCI Ashland determined that given Petitioner's "manipulative tactics, as evidenced by the inconsistency and incongruence of his attitudes and behaviors, he has failed to demonstrate that he is a good candidate for treatment." Id. Therefore, on April 18, 2017, Petitioner was informed that he would not be readmitted to the RDAP at that time. Id.

On May 1, 2017, Petitioner filed a request for administrative remedy at the Central Office level, once again requesting reinstatement into RDAP. ECF No. 13-3 at p. 14. This request was rejected for technical reasons. Id. On May 24, 2017, Petitioner refiled his administrative remedy at the Central Office. Id. at p. 15. The grievance was denied on July 17, 2017. Id.  Accordingly, Petitioner has exhausted his administrative remedies.

On July 25, 2017, Petitioner once again emailed the DAPC at FCI Ashland requesting readmission into RDAP. ECF No. 14-1 at p. 11. The DAPC consulted with the PTP Coordinator once again, and it was determined that Petitioner "demonstrated he was capable of engaging in treatment" and was placed on the waiting list for RDAP. Id.

On November 14, 2017, Petitioner was transferred to FCI Morgantown. ECF No. 13-3 at p.7. He began participating in RDAP at FCI Morgantown on December 18, 2017. Id. at p. 10. However, pursuant to policy previously noted, he will not receive any credit for prior treatment participation. Therefore, if Petitioner successfully completes the

entire RDAP program, his projected release date is April 6, 2019, via § 3621(e) conditional release. Id. at p. 2.

## II.   CONTENTIONS OF THE PARTIES

Petitioner maintains that the incident, which amounted to a comment on his part, that the RDAP cited for the basis of his expulsion, is open to much interpretation in the mind of the person hearing the comment, and does not rise to the level of expulsion under the BOP Program Statement. In addition, Petitioner alleges that he was not afforded intervention nor was this isolated incident an event which rises to the level of expulsion as defined by the need for "repeated interventions," nor did his treatment staff cite in his treatment record that he was not making satisfactory progress. To the contrary, Petitioner maintains that the treatment team had to see satisfactory progress during the unit base module in order to graduate him to the follow-up care module. Finally, Petitioner alleges that treatment staff "must cite unsatisfactory progress or inappropriate behaviors (i.e., plural or multiple) that cannot be resolved with intervention prior to expulsion." ECF No. 1-1 at p. 5. Petitioner argues that the instant matter does not come close to reaching that level, and the FMC Lexington treatment staff abused its discretion through an arbitrary and capricious decision, expelling him without reasonable cause as defined by the program statement and case law. Id.

In his brief in support of his motion to dismiss, or for summary judgment, Respondent asserts that the petition should be dismissed for the following reasons:

1.  The BOP's substantive decision to expel Petitioner from the RDAP is not subject to judicial review;

2. Petitioner has no constitutionally protected liberty interest in participation in RDAP or early release pursuant to 18 U.S.C.§ 3621(e);

3. Petitioner was properly expelled from the RDAP and thus, the BOP acted within the statutory limits; and

4. Petitioner has been readmitted into the RDAP program at FCI Morgantown, and therefore, has received all the relief to which he is entitled.

In his response, Petitioner alleges that the BOP violated its own statute, thereby harming him and making review by this Court appropriate. ECF No. 20 at pp. 4-5. Petitioner specifically argues that his expulsion from the follow-up phase of RDAP did not meet the standards set forth in 28 C.F.R. § 550.53(g). Petitioner also stresses that his single statement about a thong was the sole basis for his expulsion, and he argues that this statement falls far short of the objective magnitude that his continued presence would have created an immediate and ongoing problem for staff and other inmates. Finally, Petitioner argues that the entire section of the program statement dealing with phase two makes clear that there is no connection between the unit-based component and the second component from which he was removed solely on the bases of events that occurred in the first phase.

### III. Legal Standard

#### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and

8

Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts have long cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," Id. (citations omitted), to one that is "plausible on its face," Id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)).

In doing so, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

### B. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 (1977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-52 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than

encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 (1986).

## IV.   <u>Discussion</u>

As previously noted, Petitioner challenges the discretionary decision of prison officials to expel him from RDAP. In the undersigned's view, this habeas challenge fails for several reasons.  Although 18 U.S.C. § 3621 directs the Bureau of Prisons to "make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse," enrollment in the program, and receipt of its benefits, is something consigned to the sound discretion of the BOP.  Furthermore, while inmates frequently challenge RDAP enrollment decisions in habeas corpus petitions, they are rarely embraced by the courts. <u>Giannini v. Federal Bureau of Prisons</u>, No. 06-1166, 2010 WL 1427318 (D. Mn. Feb. 12, 2010) (collecting cases).  Instead, noting the broad language of the statute in terms of the discretion of prison officials in making decisions regarding enrollment in the RDAP programs, courts have held that: "There is no other language in the statute addressing the eligibility of prisoners for participation in RDAP, thus suggesting that Congress has granted BOP broad discretion in administering RDAP. <u>Lopez v. </u>Davis, 531 U.S. 230 (2001) (upholding BOP regulation that categorically excludes from early release consideration those RDAP participants who had possessed a firearm in connection with a nonviolent offense because statute limits such considerations  to 'prisoner[s] convicted of … nonviolent offense[s]')." <u>Goren v. Apker</u>, No. 05-9006, 2006 WL 1062904, *5  (S.D.N.Y.

April 20, 2006). Therefore, recognizing that "there is no constitutional right to rehabilitation after conviction, courts have held that a petitioner cannot demonstrate a violation of his constitutional rights by the conduct of the BOP when making enrollment decisions in the RDAP program. <u>Kokoski v. Felts</u>, 2007 WL 2821085, *6 (S.D.W. Va. Sept. 27, 2007).  Instead, it has been consistently held that in the absence of a showing that the BOP decision was "arbitrary, capricious, or an abuse of discretion," <u>Wells v. Rivera</u>, No. 06-137, 2007 WL 4219002, *8 (N.D. Fla. Nov. 28, 2007), or "[a]bsent an allegation that the BOP violated established federal law, the United States Constitution, or exceeded its statutory authority in making the determination that Petitioner was ineligible for RDAP, the Court does not have jurisdiction to review Petitioner's claims." <u>Johnston v. Thomas</u>, 2010 WL 2574090, *6 (D. Or. June 24, 2010).

Likewise, federal courts have typically denied efforts like those made by the Petitioner to review and reverse discretionary RDAP expulsion decisions under the auspices of the courts' federal habeas corpus jurisdiction. <u>See e.g.</u>, <u>Reeb v. Thomas</u>, 636 F.3d 1224, 1226 (9th Cir. 2011); <u>Douvos v. Quintana</u>, 382 Fed.Appx. 119 (3rd Cir. 2009) (affirming denial of preliminary injunction in federal habeas case challenging RDAP expulsion); <u>Richardson v. Joslin</u>, 501 F.3d 415, 416 (5th Cir. 2007); <u>Cantz v. Warden of FCI Shuylkill</u>, No. 1:14cv-2424, 2015 WL 8032530, at *1 (M.D. Pa. Aug. 17, 2015), <u>report and recommendation adopted</u>, No. 1:14-cv-2424, 2015 WL 8012922 (M.D. Pa. Dec. 7, 2015); <u>Owens v. Ziegler</u>, No. 5:11-cv-000000864, 2012 WL 3782557, at *1 (S.D. W. Va. Aug. 31, 2012); <u>Anderson v. Thomas</u>, No. CV 10-6377 MO, 2011 WL 2680741, at *1 (D. Or. July 8, 2011); <u>Via v. Lyn</u>, No. 2:10cv101, 2011 WL 573389, at *1 (N.D.W. Va. Jan. 24, 2011); <u>report and recommendation adopted</u>, No. 2:10cv101, 2011

WL 573379, at *1 (N.D.W. Va. Feb. 15, 2011); <u>Martin v. Sanders</u>, No. CV 10-2075 AG
JCG, 2010 WL 5563579, at *1 (C.D. Cal. Nov. 9, 2010), <u>report and recommendation</u>
<u>adopted,</u> No. CV 10-2075 AG JCG, 2010 WL 5563850 (C.D. Cal. Dec. 31, 2010); <u>Hugel</u>
<u>v. Bledsoe</u>, No. CIV.A.1:08-cv-1050, 2009 WL 1406252, at *4 (M.D. Pa. May 18, 2009).

Several principles emerge from these cases. First, these cases repeatedly
recognize that federal inmates have no constitutionally protected liberty interest in either
RDAP participation or a discretionary early release from custody following completion of
the RDAP program. <u>See e.g.</u>, <u>Reeb v. Thomas</u>, 636 F.3d at 1129 n.4."Because [an
inmate] is not entitled to the reduction, the BOP's action is not a deprivation of a
protected liberty interest and does not affect the duration of his sentence; he will serve
no more time than that of his original sentence." <u>Richardson</u> at 420. Because the
decision to remove an inmate from the RDAP program does not affect the duration of
his sentence in a constitutionally cognizable way, these courts hold that RDAP
expulsion claims may not be redressed through a federal habeas petition. <u>Id.</u>

Other courts have emphasized the fact that "federal courts lacked jurisdiction to
review the BOP's individualized RDAP determination is made pursuant to 18 U.S.C.§
3621." <u>Reeb</u>, 636 F.3d at 1128. As one court has observed:

> A convicted person has no constitutional or inherent right to be
> conditionally released before the expiration of a valid sentence. Nor does
> the Due Process Clause confer a right upon an inmate to participate in
> rehabilitative programs. Statutes or regulations governing prison
> administration can create liberty interests protected by the Due Process
> Clause, but those interests are limited to freedom from restraint… [that]
> imposes atypical or significant hardship on the inmate in relation to the
> ordinary incidents of prison life. The possibility of early release upon the
> completion of RDAP, does not create a protected liberty interest because
> denial of early release does not impose an atypical hardship on a federal
> prisoner; it merely means that the inmate will have to serve out his
> sentence as expected. Ergo, Petitioner's expulsion from RDAP does not

implicate due process concern because he has no liberty interest in
completing the program or in any potential early release upon completion
of the program.

Martin v. Sanders, No. CV 10-2075 AG JCG, 2010 WL 5563850 (C.D. Cal. Dec. 31,

2010) (internal quotations and citations omitted).

These principles apply to the instant petition and establish that it should be

denied for several reasons. First, the Petitioner does not identify, nor even argue, a

sufficient liberty interest affected by his RDAP expulsion to support a due process claim.

Furthermore, given the far-reaching discretion conferred upon prison officials by § 3621,

any due process analysis of this petition is limited to a determination of whether the

actions of prison officials were entirely arbitrary and capricious. Although the Petitioner

maintains that they were, the undersigned disagrees. In this case, the Petitioner was

expelled from RDAP due to his disruptive behavior related to the program and his

unsatisfactory progress in treatment. In particular, the RDAP Follow Up-Discharge Note

is compelling:

The treatment team met with [the Petitioner] on November 23, 2016
concerning an inappropriate, and he stated during follow-up group.
Specifically, on November 18, 2016 while in group, staff heard [the
Petitioner] make the comment 'if she shows up of the door wearing a
thong' and chuckled. His comment was in reference to the group's
discussion on social pressure and utilizing refusal skills. When confronted
on his comment, and [the Petitioner] appeared surprised and offguard.

Prior to team intervention, [the Petitioner] approached this writer and
appeared confused as to why he was on call-out. When reminded of team
meeting, he became defensive and attempted to minimize and make
excuses for his actions. He expressed that he did not feel he should be
seen team for the common he made. During the team intervention, [the
Petitioner] initially presented as reserved and displayed more passive
body language. He expressed his apology for making the comment;
however when asked what type of response he was expecting from his
peers, he did not answer the question and instead linked his comment to
his previous specialty group and process addictions. Specifically, stating

14

that he was hoping to 'process' his thought more in group and that it was a 'trigger' for him. Staff challenged him on his lack of honesty and true intention as evidenced by his chuckling an initial surprise when realizing his comment was overheard. [The Petitioner] was also reminded of his previous team interventions for making inappropriate comments toward staff, poor boundaries and repeated struggles with responsibility. Furthermore he was provided feedback as to the difference in his presentation in and outside of team (line. E., Boisterous and argumentative), as well as how he typically conveys himself to others as a way to control outcomes and manipulate situations. He became defensive and use deflection as a way to avoid answering questions and taking responsibility for his actions.

At the time of this treatment intervention, it is noted that [the Petitioner] has been called to meet with the treatment team on three previous occasions (i.e., 2-25-2016, 04-19-2016, and 06-29-2016) and received two formal warnings of expulsion. He is DAP COMPLETE and continues to demonstrate a lack of willingness to be receptive to feedback and applied treatment tools and concepts he learned while in the RDAP. Therefore, it was the treatment team's decision to remove him from RDAP follow-up.

When informed of the teams decision, [the Petitioner] became argumentative and was not receptive to feedback, and started talking over staff. He expressed feelings this was 'too harsh' and began naming of the peers who have been teamed and received what he perceived to be less severe consequences. Once again, he was reminded that he had received multiple clinical interventions and previous formal warnings, and that he continues to demonstrate a lack of willingness to apply phase related treatment concepts. Lastly, when excused from team, [the Petitioner] continued to stand over the table and argue his point, and required being given in order to leave the room.

ECF No. 14-1 at p.6.

Accordingly, given the Petitioner's documented history of non-compliance with program requirements spanning over a period of time, and his observed failure to apply treatment concepts, the undersigned finds that the decision to expel him from the RDAP program does not reach a conscious shocking level of arbitrariness, justifying federal habeas corpus relief.  See Hunterson v. DiSabato, 308 F.3d 236, 246-47 (3d Cir. 2002)

(applying conscious shocking level of arbitrariness standard of review to discretionary parole denial decision).

Moreover, although the Petitioner alleges that the BOP failed to comply with its own policy directives, he fails to provide substantive merit for this argument. More particularly, although the Petitioner alleges that under 28 U.S.C. § 550.53 (g)(3), the tool for immediate expulsion is defined as "for incident reports where a participant was found to have committed a violent act or made a violent threat," a review of the code reveals no such provision. In fact, the provision specifically provides that "[i]nmates may be removed from the program by the Drug Abuse Program Coordinator because of disruptive behavior related to the program or unsatisfactory progress in treatment." Id. at § 550.53(g)(1).

## V.    Recommendation

Based on the foregoing, the undersigned recommends that Respondent's Motion to Dismiss or, in the alternative, for Summary Judgment [ECF No. 13] be **GRANTED** and this § 2241 petition be **DISMISSED WITH PREJUDICE**. The undersigned further recommends that the Petitioner's Motion to Strike [ECF No. 19] and Motion to Expedite [ECF No. 24] be **DENIED**.

Within fourteen (14) days after being served with a copy of this Recommendation, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the Honorable Frederick P. Stamp. Jr., United States District Judge. Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to

appeal from a judgment of this Court based upon such Recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk of the Court is **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* Petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet. The Clerk  is further **DIRECTED** to provide a copy to all counsel of record via electronic means. Finally, upon entry of this Report and Recommendation, the Clerk is **DIRECTED** to terminate the magistrate judge association with this case.

**DATED:**  November 16, 2018

/s *James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE